IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION


TIMOTHY RAY WILLIAMS,              §
                                  §
        Petitioner,               §
                                  §
v.                                §           2:09-CV-0288
                                  §
RICK THALER, Director,            §
Texas Department of Criminal Justice, §
Correctional Institutions Division, §
                                  §
        Respondent.               §


**REPORT AND RECOMMENDATION
TO DENY PETITION FOR A WRIT OF HABEAS CORPUS**

Petitioner has filed with this Court a Petition for a Writ of Habeas Corpus by a Person in

State Custody challenging his conviction out of the 181st Judicial District Court of Randall

County, Texas, for two (2) counts of felony possession of a controlled substance. For the

reasons hereinafter expressed, the United States Magistrate Judge is of the opinion petitioner's

application for federal habeas corpus relief should be DENIED.


I.
FACTUAL AND PROCEDURAL BACKGROUND

On July 30, 2006, at approximately 10:36 p.m., the Amarillo Police Department received

a phone call reporting "dp/ck for a drug house" or a "large amount of traffic coming in and out of

the house" at a residence at 4345 S. Polk in Randall County, Texas. The caller further reported

the subject was also "selling out of a silver van out front." A dispatch to the residence was

issued.

Amarillo Police Officer Callahan was "called out" to "investigate narcotic-related offenses" at the address, and Officer Perales was assigned as backup officer. The officers arrived at the residence in their patrol cars at the same time. Upon their arrival, Officer Callahan advised Perales he had "also received additional information that there were narcotics sales at this residence through [the department's] Crime Stoppers bulletin."

The officers did not observe any kind of narcotics offense taking place in the yard or in front of the house, but proceeded to the front door of the house and knocked. A woman opened the door, the officers advised her why they were there, and asked if she was the owner of the residence. The woman advised she was not and called petitioner to the door. The officers informed petitioner why they were there. In response, petitioner advised the officers he had just moved in or was in the process of moving in.

During this initial encounter at the door, Officer Callahan noticed activity inside the residence which made him concerned for the safety of he and Officer Perales. Consequently, Officer Callahan asked petitioner if everyone would step out of the residence so that he could talk to them all at once and not worry about what was going on inside the residence. Petitioner agreed and he, another male and two females stepped outside. After identifying the individuals, Officer Callahan asked petitioner for his consent to search the residence. Petitioner refused consent to search. Officer Callahan then explained to petitioner that all shifts receive the Crime Stoppers tips so he would probably be contacted by other officers continuing the investigation. Petitioner then agreed to allow Officer Callahan to walk through the residence as long as petitioner could accompany the officer. At the time petitioner agreed to this walk-through, he

was not in any restraints, Callahan's weapon was not visible, and Callahan had not used any threatening language.

Petitioner proceeded to lead Callahan through the residence, identifying a west bedroom as his bedroom.  Upon entering this bedroom, Officer Callahan observed a glass methamphetamine pipe in plain view on a high shelf.  Upon such observation, Officer Callahan placed petitioner under arrest for possession of narcotics paraphernalia and returned to the others waiting outside the house.  The female who had answered the door claimed ownership of the paraphernalia, but was unable to confirm where the pipe had been found.

Once outside, Officer Callahan presented petitioner with a written consent to search, which he signed.  After obtaining the consent, Officer Callahan, accompanied by petitioner, returned to petitioner's bedroom to continue the walk-through of the house.  During this continued walk-through, Officer Callahan observed a safe in petitioner's bedroom.  When the officer asked petitioner about the contents of the safe, petitioner replied that it contained "a small amount of narcotics, mainly methamphetamine."  After Officer Callahan advised petitioner that his statement concerning the contents of the safe would support a search warrant, petitioner supplied Officer Callahan with the code to the safe.  Upon opening the safe, the officer found, among numerous other items, a small plastic bag containing methamphetamine, a small plastic bag containing cocaine, unused plastic bags and multiple scales.  Officer Callahan's search of the east bedroom, identified by petitioner as belonging to one of the females outside, revealed another glass methamphetamine pipe and more methamphetamine in a plastic bag in plain view. When the officer returned outside, however, the female who answered the door again claimed ownership of the additional pipe and narcotics.  Additional narcotics paraphernalia were located

in that female's purse. Both petitioner and the female were arrested on narcotics possession offenses. The female eventually signed a statement claiming ownership of all but the narcotics found in the safe.

On August 1, 2006, in Cause No. 18,246-B, a complaint was filed against petitioner and, on September 12, 2006, counsel was appointed to represent petitioner. Counsel filed numerous motions including a motion to dismiss for the lack of a timely indictment. On March 7, 2007, petitioner was charged by indictment with the second-degree felony offenses of possession of a controlled substance (methamphetamine) in an amount by aggregate weight of less than one (1) gram, and possession of a controlled substance (cocaine) in an amount by aggregate weight of less than one (1) gram. *State v. Williams*, No. 18,246-B. The indictment alleged two prior burglary of a habitation convictions which enhanced the potential punishment range to a term of not less than two (2) years and not more than twenty (20) years. Counsel filed numerous other pre-trial motions, but did not file a motion to suppress.

The case was set for jury trial on July 2, 2007. Prior to the voir dire examination, trial counsel requested to make a record outside the presence of the jury. Trial counsel's experienced investigator testified he had investigated two (2) criminal cases against petitioner,[1] checked all leads provided by petitioner, and considered every possible witness. Vol. 2 at 15-20. Petitioner testified, however, that the investigator only asked him questions pertaining to the other case (not the instant case), that counsel had not advised him of the trial date in this case (only telling petitioner's father of the trial date), had advised him his other case would go to trial first, and

---

[1]Less than a month after petitioner's arrest in this case, a search of the same residence executed pursuant to a search warrant revealed 8.68 grams of methamphetamine in the west bedroom. Petitioner was charged by indictment with possession of this contraband.

that he was going to file a complaint against trial counsel with the Texas Bar Association. Petitioner advised there were witnesses he had requested counsel call for his trial that had not been subpoenaed or bench warranted, and that he did not believe this case had been investigated. Petitioner testified trial counsel had cursed at him, made derogatory remarks and otherwise expressed disdain for petitioner. Petitioner requested his trial be continued and other counsel be appointed to represent him in a future trial because he could not "safely go to trial with [trial counsel] as my attorney." Vol 2 at 20-26. The trial court denied petitioner's motion for continuance and for the appointment of new counsel, and called the jury panel for voir dire examination.

At trial, on cross-examination, defense counsel elicited testimony from the officers that while petitioner admitted he was aware of the methamphetamine in the safe, he did not admit he was aware of the cocaine, and at no time did he claim ownership of the narcotics found inside the safe. Defense counsel also elicited testimony that it was possible others had access to the safe, and that it was possible the narcotics could have been placed there by another occupant of the residence. Defense counsel also pointed out that officers did not test the bags of narcotics for fingerprints. Defense counsel did not call any witnesses for the defense but did call petitioner to the stand for purposes of making a record outside the presence of the jury. Petitioner testified that after consulting with his attorney, he was electing not to testify at the guilt/innocence phase of the trial, and that such decision was made freely and voluntarily. Petitioner also acknowledged defense counsel was "trying hard" to defend him at trial, and that he was satisfied with the services defense counsel had provided. Vol. 3 at 18-20. The jury ultimately found petitioner guilty of both counts of possession of a controlled substance as alleged in the indictment.

On July 3, 2007, at sentencing, petitioner pled true to the two (2) enhancement allegations of the indictment. The State then introduced evidence of four (4) final prior felony convictions for petitioner. Petitioner then testified he was aware his female roommate had drugs in the house that night, that the methamphetamine found in the safe belonged to her, and that he was aware it was going be in the safe because the door to the safe was open when the officers arrived but was closed when they began the walk-through. Petitioner denied any knowledge of the cocaine found in the safe and averred he learned, after the fact, that the other male at the house that night had brought it. Petitioner also offered details and explanations for his past felony convictions and made a plea to the jury for leniency. On cross-examination, the State elicited testimony that petitioner had also been previously convicted of three (3) misdemeanors. The jury then assessed punishment for each count at twenty (20) years imprisonment with a $10,000 fine, the maximum punishments permitted by law. The trial court ordered the sentences to run concurrently.

On July 6, 2012, trial counsel filed a notice of appeal on petitioner's behalf. On September 10, 2007, new counsel was appointed to represent petitioner on appeal. On November 28, 2007, appellate counsel filed an *Anders*[2] brief with the Court of Appeals for the Seventh District of Texas, wherein he certified that, after diligently searching the record, petitioner's appeal was without merit. In compliance with the principles enunciated in *Anders*, appellate counsel discussed potential grounds of error and explained why they were meritless. Appellate counsel specifically addressed the effectiveness of counsel and petitioner's retraction of his disapproval of counsel noting, "Although counsel did not object to the search of the

---

[2]*See Anders v. California*, 386 U.S. 738, 744-45, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

Appellant's house by Amarillo Police officers, the evidence before the court was that the

Appellant withdrew his initial objection and gave both verbal and written consent; therefore, any

objection would have been without legal foundation." On April 23, 2008, petitioner filed a *pro*

*se* appellate brief arguing ineffective assistance of counsel for failure to present witnesses at trial

who would have testified as to the ownership of the drugs found in the safe and the illegality of

his detention and consent, counsel's failure to file a motion to suppress, and counsel's failure to

withdraw due to a conflict of interest. Petitioner also argued the trial court abused its discretion

by failing to investigate the conflict of interest or appoint new trial counsel. The state appellate

court conducted its own review of the record to assess the accuracy of appellate counsel's

conclusions and to uncover any error, reversible or otherwise, and concluded that none existed.

On July 16, 2008, the state appellate court affirmed petitioner's conviction and sentence.

*Williams v. State*, No. 07-07-0314-CR (Tex.App.–Amarillo July 16, 2008) (unpublished). On

August 15, 2008, petitioner filed a *pro se* petition for discretionary review (PDR) challenging the

appellate court's holding. On October 1, 2008, PDR was refused, *per curiam*, by the Texas

Court of Criminal Appeals. *In re Williams*, PDR No. 1180-08.

On June 26, 2009, petitioner filed a state application for a writ of habeas corpus alleging

the same grounds alleged in this federal petition. *Ex parte Williams*, No. 72,440-01. On July 13,

2009, the State filed an answer noting the state intermediate appellate court had independently

reviewed the entire record for reversible error and found no error and that the Texas Court of

Criminal Appeals had refused petitioner's petition for discretionary review raising the same

grounds. The State argued the majority of petitioner's claims need not be addressed again on

collateral review and, in fact, were procedurally barred as they had been raised on direct appeal

and found to be without merit, and had been refused discretionary review. The State further argued petitioner's claim of ineffective assistance of counsel for failing to file a motion for discovery of the Crime Stoppers bulletin, and claim of a *Brady* violation by the State for failing to disclose such bulletin, were waived due to his failure to raise such issues on direct appeal and, even so, were without merit. On July 28, 2009, petitioner filed a reply to the State's answer. The state trial court did not enter findings of fact or conclusions of law. On August 12, 2009, the Texas Court of Criminal Appeals denied petitioner's state habeas application without written order.

On December 7, 2009, petitioner filed the instant federal application for habeas corpus relief. On April 19, 2010, respondent filed an answer arguing petitioner's habeas application should be denied because petitioner had not met his burden of proving the state courts' determinations of his claims are unreasonable and because the claims are without merit. On May 7, 2010, petitioner submitted a reply in rebuttal to respondent's arguments.

II.
PETITIONER'S ALLEGATIONS

In his petition for writ of habeas corpus and supporting brief, petitioner appears to contend he is being held in violation of the Constitution and laws of the United States for the following reasons:

1. Petitioner was subjected to an unconstitutional search and seizure, and his consent to the search of the residence was involuntary;

2. Petitioner was denied effective assistance because trial counsel:

   (a) failed to file a motion to suppress;

   (b) failed to investigate and present fact witnesses who could have supported petitioner's assertions of illegal detention and coerced consent; and

(c)     labored under a conflict of interest.

3.      The State violated *Brady v. Maryland* by withholding the Crime Stoppers Bulletin referenced by the officer investigating the dispatch to petitioner's residence;

4.      Petitioner was denied a fair trial and/or due process because the trial court failed to properly inquire into the conflict of interest, grant a continuance and appoint new counsel to represent petitioner; and

5.      Petitioner was denied effective assistance of appellate counsel because appellate counsel filed an *Anders* brief and did not present the aforementioned issues.

III.
STANDARD OF REVIEW

Section 28 U.S.C. § 2254(d) provides a writ of habeas corpus on behalf of a person in custody under a state court judgment shall <u>not</u> be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless that person first shows the prior adjudication:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Petitioner filed a direct appeal and a petition for discretionary review challenging the constitutionality of his conviction and sentence on several of the same grounds he asserts in this federal habeas proceeding. On direct appeal, the state appellate court found no error, constitutional or otherwise, and affirmed petitioner's conviction. *Williams v. State*, No. 07-07-

0314-CR.  The Texas Court of Criminal Appeals, the highest state court, refused, *per curiam*, petitioner's petition for discretionary review of his claims.  *In re Williams*, PDR No. 1180-08.  Petitioner presented these same claims to the Texas Court of Criminal Appeals in a state habeas corpus petition, together with the remaining claims asserted in this federal habeas proceeding, and was denied relief without a written order.  *Ex parte Williams*, No. 72,440-01.  The ruling of the Texas Court of Criminal Appeals constituted an adjudication of petitioner's state habeas corpus claims on the merits.  *See Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999); *Ex parte Torres,* 943 S.W.2d 469 (Tex.Crim.App. 1997) (under Texas law a denial by the Court of Criminal Appeals signifies the court addressed and rejected the merits of the claims).  Therefore, the deferential standard set forth in 28 U.S.C. § 2254(d) is applicable and must be overcome by petitioner.  Consequently, this Court's review is limited to a determination of (1) whether petitioner has shown the state court's determination that petitioner's claims were without merit was based on an unreasonable determination of the facts in light of the evidence before the state court, or (2) whether petitioner has shown the state habeas court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

IV.
<u>MERITS</u>

Respondent has filed an answer wherein he fully and accurately briefs the applicability of the AEDPA to this case and the appropriate standards of review under 28 U.S.C. § 2254(d) for considering petitioner's claims, for reviewing the state court's determination as to the merits of petitioner's claims, and the appropriate burden of proof on petitioner.  The Court need not repeat

that analysis.

## A.  Search, Seizure, and Consent

By his first ground, petitioner contends he was subjected to an unconstitutional search and seizure because he was detained without reasonable suspicion or probable cause, and because his consent to search the residence was involuntary due to coercion on the part of the police officers.  Petitioner's illegal search and seizure claim is barred from federal habeas corpus review by *Stone v. Powell*, 428 U.S. 465, 494 (1976).  Federal courts have no authority to review a state court's application of Fourth Amendment principles in habeas corpus proceedings unless the petitioner was denied a full and fair opportunity to litigate his claims in state court.  *Id*.  Here, petitioner not only had an opportunity to present this claim at trial, but presented this claim in his state habeas corpus petition which was denied by the state's highest court without written order.[3] Petitioner had a full and fair opportunity to litigate this claim in the state courts.  Petitioner's first ground should be DENIED.

## B.  Assistance of Trial Counsel

In his answer, respondent has set forth the proper standard under *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984) and its progeny for reviewing claims of ineffective assistance of counsel in federal habeas corpus proceedings.  Petitioner's claims are analyzed under that standard.

---

[3]On appeal, petitioner argued ineffective assistance of trial counsel for failure to file a motion to suppress on the grounds of an illegal search and seizure and involuntary consent to search.

## *Failure to File a Motion to Suppress*

Petitioner first contends trial counsel was ineffective for failing to file a motion to suppress the evidence used in his trial on the bases such evidence was obtained as a result of a prolonged detention, illegal search and seizure, and involuntary consent to search. The Texas Court of Criminal Appeals denied petitioner relief on the merits of this claim. To obtain federal habeas corpus relief, petitioner must show this denial "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence . . . ." Petitioner has failed to make the required showing.

Petitioner appears to argue counsel was deficient in failing to file a motion to suppress on the following bases: (1) officers did not have a reasonable suspicion of criminal activity to justify a knock and talk at petitioner's residence; (2) officers did not have exigent circumstances justifying the removal of petitioner (and the other occupants) from the home, resulting in an unlawful seizure which tainted his subsequent verbal consent to conduct a limited search of the residence; and (3) written consent to search was involuntary as it was the result of a prolonged detention and coercion. Petitioner contends the trial court would have granted a motion to suppress, thereby excluding the evidence against him, resulting in dismissal of the charges.

## *Knock and Talk*

Petitioner appears to argue the officers violated his Fourth Amendment rights because they did not have reasonable suspicion upon which to approach his home to conduct a "knock and talk" investigation for purported drug activity. Petitioner argues the dispatch, which he contends issued at 10:39 p.m., was based on an anonymous, uncorroborated tip that drug sales

were being conducted out of a van parked on the street in front of petitioner's residence.  Upon

arrival, the officers did not observe any kind of narcotics offense taking place in the yard or in

front of the house.  Petitioner argues the officers had no reasonable suspicion that criminal

activity was occurring inside the house, that the knock and talk was violative of the Fourth

Amendment, and counsel was deficient for failing to file a motion to suppress.

The officers did not begin their shifts until approximately midnight, July 31, 2006.  There

is no evidence in the record establishing when the dispatch to the officers was issued, although

Officer Perales testified they arrived "earlier in the shift."  Nor is there any evidence in the

record to support petitioner's claim that the dispatch was based on an anonymous,

uncorroborated tip.  In fact, Officer Callahan testified he had "also received additional

information that there were narcotics sales at this residence through [a] Crime Stoppers bulletin.

The dispatch, according to a document presented by petitioner in his state habeas proceeding,

was for a "drug house" and for sales taking place out of a vehicle in front of the house.  Officer

Perales testified he recalled additional information from the dispatch indicating the caller had

observed a "large amount of traffic coming in and out of the house."  Assuming the officers

needed a factual basis to merely knock on the front door and talk to the owner/occupant of the

house, petitioner has not demonstrated the officers did not have sufficient reliable facts to

investigate not only any activity occurring in any vehicles parked in front of the house, but also

to investigate the basis for the call with regard to the house itself.

While the reports of suspected narcotics activity and/or dispatch call did not justify entry

into the residence itself, either officer, like any common citizen, had the right under Texas law to

enter onto the residential property, approach the front door of the residence, and knock for the

purpose of asking the occupants questions, as long as there were no express orders forbidding trespass. *See State v. Perez*, 85 S.W.3d 817, 819 (Tex.Crim.App. 2002); *Cornealius v. State*, 900 S.W.2d 731, 734 (Tex.Crim.App. 1995). "The purpose of a 'knock and talk' approach is to make investigatory inquiry or, if officers reasonably suspect criminal activity, to gain the occupants' consent to search." *United States v. Gomez-Moreno*, 479 F.3d 350, 355 (5th Cir. 2007). The "knock and talk" strategy is a non-custodial procedure and reasonable investigative tool. *See United States v. Lewis*, 476 F.3d 369, 381 (5th Cir. 2007); *Hardesty v. Hamburg Twp.*, 461 F.3d 646, 658 (6th Cir. 2006). Officers need not have reasonable suspicion for suspecting a particular person to simply ask questions of that individual or request consent to search, so long as the officers do not indicate compliance with the request is required. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386 (1991).

Here, the two officers knocked on the front door to the house and awaited a response. There is no evidence of extended periods of repeated banging or yelling, or any other show of force or authority. The door was voluntarily opened, and a cordial and informative exchange as to why the officers were there was made with a female occupant. When the occupant denied a possessory interest in the home, the officers waited on the porch while the occupant retrieved petitioner from another room and he came to the door. The officers again explained the purpose of the call to petitioner. The officers did not demand entry into the home or attempt any type of forced entry. Petitioner has not shown the officers exceeded the scope of a valid "knock and talk" or that the investigatory inquiry was improper. Petitioner has not demonstrated the above circumstances provided a valid basis for a motion to suppress, that counsel was deficient for failing to file such a motion, or that such a motion to suppress would have been successful, much

less making a showing that the state court denial of relief was unreasonable.

*Removal from Home*

Petitioner also appears to argue the officers violated his Fourth Amendment rights when the officers asked that he (and the other occupants of the house) step outside the home where they were eventually patted down, identified and run through the system for outstanding warrants. Petitioner argues his removal from the home by the officers could only be justified by exigent circumstances and that the officers' claims that removal was necessary for the safety of the officers was unfounded and inadequate. Petitioner contends his removal resulted in an unlawful seizure of his person, warrantless detention, or illegal arrest, prior to his giving verbal consent to conduct a limited search of the residence, thereby tainting the validity of his consent. Petitioner contends counsel was deficient for failing to file a motion to suppress on this basis.

Officer Callahan testified that while he was speaking with petitioner at the front door, he noticed "a whole lot of movement in the background. I could see people coming and going from the back half of the residence into areas that I can't see. This made me nervous. I don't know if they're obtaining a weapon or they're trying to jump out a window, which is not uncommon on a lot of calls that we go on." Vol. 2 at 150. Callahan testified that for these reasons, he asked petitioner if the people inside the residence would step out so that he "could talk to them all at one time and not have to worry about what's going on inside the residence." *Id.* Callahan testified petitioner agreed to his request, and eventually petitioner and the other three occupants came outside onto the front porch. Callahan estimated that from the time he knocked until the time everyone came out onto the porch was less than five minutes. Vol. 2 at 152. Callahan testified he and Officer Perales then requested the individuals identify themselves. Officer

Perales testified that after Officer Callahan and petitioner went inside the residence to perform a walk through, Perales began running the warrants checks. Vol. 2 at 229.

While petitioner argues the officers' request the he and the others "step outside so that he could talk to them all at one time and not have to worry about what's going on inside the residence" amounted to a seizure, an arrest or a detention which invalidated his subsequent consent, the state court reasonably could find petitioner's encounter with the police outside his house was the continuation of the consensual encounter initiated when the occupants of the house responded to the officers' lawful knock on the door. When requested to step outside, petitioner agreed and instructed the others to do so as well. Asking a person to exit his house and questioning him outside does not amount to conduct which a reasonable man would view as threatening or offensive. Petitioner was not seized, much less under arrest, at the time he gave his consent to search. *Cf. Aguirre v. State*, 2012 WL 2922547 (Tex.App.–Houston [1st] July 5, 2012) (asking defendant and his family to step outside to talk in the front yard, asking the defendant to sit down, and questioning the defendant outside the presence of his family was not a seizure).

Even if this Court were to find the officers ordered petitioner to step outside and such encounter then became a seizure, petitioner's argument must fail. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment does not prohibit *all* searches and seizures, but rather, only those that are unreasonable. *United States v. Clayton*, 374 Fed.Appx. 497, at *2 (5th Cir. March 12, 2010) (citing *Martinez-Fuerte*, 428 U.S. at 554, 96 S.Ct. 3074. "[T]he reasonableness of a search is determined 'by assessing,

on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *United States v. Knights*, 534 U.S. 112, 118–19, 122 S.Ct. 587 (2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300, 119 S.Ct. 1297 (1999)).

Here, the officers had properly utilized the "knock and talk" procedure and had been required to repeat the stated purpose of their presence to two different individuals in the home. While communicating with petitioner at the entryway of the house, the officers observed continued movement of several individuals inside the residence to areas not visible from the front door. Considering the drug-related nature of the dispatch, the previous Crime Stoppers' report, and the time of night, the officers' belief that their safety could be compromised was reasonable. The safety of an officer is both legitimate and weighty, and it is unreasonable to require that police officers take unnecessary risks in the performance of their duties. *See Terry v. Ohio*, 392 U.S. 1, 23, 88 S.Ct. 1868 (1968). The officers' instruction for everyone to step to the front porch to conduct their conversation with everyone at one time was reasonably related in scope to the circumstances. Petitioner and the others stepped outside, not in submission to a show of force or authority leaving them no choice but voluntarily. The officer's request that petitioner step outside and petitioner's compliance, even if considered a detention, was not an unreasonable intrusion on petitioner's Fourth Amendment rights.[4] Petitioner has not demonstrated the facts and circumstances provided a valid basis for a motion to suppress, that counsel was deficient for failing to file such a motion on this basis, or that such a motion on this

---

[4]Petitioner's argument that the officers needed exigent circumstances to lawfully request he step outside of the house is not applicable to the facts here. The existence and analysis of exigent circumstances is triggered when law enforcement makes a warrantless entry into a home without consent. Here, the officers did not enter petitioner's home prior to receiving petitioner's consent to search.

basis would have been successful.

## *Reasonable Suspicion to Search*

Petitioner also appears to argue the officers violated his Fourth Amendment rights because they did not have reasonable suspicion to search the house. Petitioner contends counsel was deficient for failing to file a motion to suppress on this basis.

Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041 (1973). Texas courts have recognized that individuals may voluntarily consent to have their homes searched and that the police are not required to have reasonable suspicion of criminal activity before requesting consent to search. *Johnson v. State*, 226 S.W.3d 439, 443 (Tex.Crim.App. 2007). Here, petitioner gave the officers verbal consent to conduct a search of the house, limited only by his accompanying the officer in the walk-through. Upon obtaining petitioner's consent, the officers did not need a warrant, probable cause or reasonable suspicion to enter petitioner's house. Petitioner has not demonstrated the above circumstances provided a valid basis for a motion to suppress, that counsel was deficient for failing to file such a motion on that basis, or that any motion to suppress would have been successful.

## *Voluntariness of Consent*

Lastly, petitioner appears to argue his consent to search was involuntary and the search of the house was violative of his Fourth Amendment rights. Petitioner appears to argue his initial verbal consent to search was involuntary because the officers coerced and threatened him with possible further investigation by other officers. Petitioner appears to argue his written

consent to search was involuntary as it was the result of a prolonged detention.

The voluntariness of consent is a fact question determined by analyzing all of the circumstances of a particular situation. *Schneckloth v. Bustamonte*, 412 U.S. 218, 228, 93 S.Ct. 2041 (1973). Valid consent must "not be coerced, by explicit or implicit means, by implied threat or covert force." Courts review the totality of the circumstances of a particular police-citizen interaction from the point of view of the objectively reasonable person, without regard for the subjective thoughts or intents of either the officer or the citizen. *Maryland v. Macon*, 472 U.S. 463, 470-71, 105 S.Ct. 2778 (1985). The ultimate question is whether the person's "will ha[s] been overborne and his capacity for self-determination critically impaired," such that his consent to search must have been involuntary. *United States v. Watson*, 423 U.S. 411, 424, 96 S.Ct. 820 (1976)).

Officer Callahan testified he informed petitioner why the officers were there and asked for consent to search for narcotics. Vol. 2 at 153. Callahan testified petitioner became "nervous and jittery," replied that he did not want them to search and denied consent. Vol. 2 at 156. Callahan testified:

> I began to inform him of the process of the Crime Stoppers tips. I'm not the only officer or Officer Perales is not the only officer that's going to receive these Crime Stoppers tips. They're issue out to all shifts. So I informed him that it wouldn't be uncommon for more officers to knock on his door and knock on his door again and to further the investigation that way.

Officer Callahan explained he informed petitioner "that other officers could possibly be coming out later in the week, the day, unknown." Vol. 2 at 156. Petitioner was on the porch during this exchange, was not in any kind of restraints, and the officers' weapons were not visible or pointed at him. Officer Callahan testified he did not use any threatening language or make any threats

toward petitioner physically as he was talking to him. Vol. 2 at 155. Officer Callahan testified

petitioner then stated he would allow the officer to "look through his house as long as he could

walk with [him]," and that petitioner then led the officer into the residence. The other three

occupants remained on the porch with Officer Perales. Vol. 2 at 156.

Officer Perales testified Officer Callahan asked petitioner for permission to search and

petitioner responded, "no, he didn't want us to search." Vol. 2 at 228. Perales then testified:

> Well, we informed him that we were there investigating possible selling of
> narcotics, and by him refusing, we informed him that, you know officers will be
> back, because there's an ongoing investigation and we need to determine whether
> or not narcotics are being sold. So more than likely we told him – we told him,
> more than likely, officers will be back to this house to talk to you again.

Perales testified petitioner then stated, "[A]ll right, you can come in the house and you can

search, but I want to search with you. I want to be with you." Vol. 2 at 228-29. Officer Perales

testified Officer Callahan agreed to those terms, and that while Callahan and petitioner went

inside the residence, Perales began running the warrant checks. Vol. 2 at 229.

On cross-examination, Officer Perales again testified Officer Callahan "informed

[petitioner] that other officers may return to the house in order to question him again since it was

an ongoing investigation for narcotics selling." Vol. 2 at 243. Perales clarified they told

petitioner that if he would permit a search, "the possibility of selling narcotics could be settled."

*Id*. Perales denied hearing Officer Callahan tell petitioner that if he did not allow a search that

"he would be back and tear the walls out of the house." Vol. 2 at 244.

Petitioner argues the officers' comments that further investigation by other officers was a

possibility was coercive to the degree it rendered his consent involuntary. Petitioner's desire to

avoid possible future encounters with the police, however, could be viewed as showing his

consent to search was motive-driven and, therefore, voluntary.[5]  Regardless, the statement

concerning the possibility of further investigation by other officers is but one factor to be

considered among the totality of the circumstances in evaluating the voluntariness of petitioner's

consent.[6]  When petitioner gave his consent, he had been advised of the reason for the officers'

presence and had cooperated in the investigation by gathering the other occupants and stepping

out of the house to be addressed by the officers as a group.  Petitioner was not in custody or

restrained, nor had the officers used threats, violence, or tricks, made any overt display of

authority, or even been discourteous in any manner.  Further, in declining to allow a search

initially, it appears petitioner fully understood his right to refuse to allow the officers to search

the residence without a search warrant.  Since the controlled substance with which petitioner was

charged was found in a locked safe, it could have been that petitioner believed no incriminating

evidence would be discovered.  Such factors weigh in favor of voluntary consent.  Petitioner has

not demonstrated the circumstances, primarily the officers' comments regarding possible further

investigation, were sufficient to overbear his free will and/or impair his "capacity for self-

determination."  *See United States v. Watson*, 423 U.S. 411, 424, 96 S.Ct. 820 (1976).  The

undersigned finds the initial encounter during which petitioner gave his limited consent to search

the house was voluntary.

### *Written Consent*

Petitioner also appears to argue his written consent, signed at 1:21 a.m., was involuntary

---

[5]*Cf. United States v. Tompkins*, 130 F.3d 117, 122 (5th Cir. 1997) (advising defendant his hotel room *would* be secured and the officer *would* obtain a search warrant for the room when informing defendant of the consequences of his refusal to consent, did not render consent involuntary).

[6]Voluntariness of consent is determined from the totality of the circumstances surrounding the search, and no single factor is dispositive or controlling of the voluntariness issue.  *United States v. Olivier-Becerril*, 861 F.2d 424, 426 (5th Cir. 1988).

due to what he contends was a prolonged detention.  Petitioner has not demonstrated his verbal

consent to search, which the Court finds to be valid and voluntary, was ever withdrawn or

limited beyond his request to accompany the officers on any search.  The Court finds the written

consent, given after petitioner's arrest for drug paraphernalia, securing of the methamphetamine

pipe, and the processing of the warrant searches on each of the occupants of the residence, was

merely an expansion and memorialization of his prior, unrevoked consent to search.  As

petitioner has not demonstrated the totality of the circumstances rendered his initial consent to

search involuntary, he has not demonstrated a claim of involuntary consent provided a valid

basis for a motion to suppress, that counsel was deficient for failing to file such a motion on this

basis, or that such a motion on this basis would have been successful.

Based on the evidence of record, there was no basis to assert the officers violated the

Fourth Amendment by approaching the house to conduct a "knock and talk," by requesting

petitioner step outside from the residence for identification and questioning, or that petitioner's

consent to search was not freely and voluntarily given.  It appears any motion to suppress filed in

this case would have been denied.  Further, during a pre-trial hearing, trial counsel stated that

after reviewing the facts of petitioner's case with his investigator, he felt a motion to suppress

was not warranted and, in fact, would have been frivolous.  Vol. 2 at 15.  Such statement

supports a finding that counsel's decision not to file a motion to suppress was a reasoned

decision and not inadvertence.  Petitioner has not demonstrated any motion to suppress would

have been granted so as to affect the outcome of the proceeding.  Petitioner has not shown he

was prejudiced by counsel's failure to file a suppression motion.  Petitioner's claim should be

DENIED.

*Failure to Investigate and Call Fact Witnesses*

Petitioner next contends trial counsel was ineffective for failing to investigate potential fact witnesses and call such witnesses to testify at trial. Petitioner maintains the three (3) other occupants at the house that night could have supported petitioner's assertions of illegal detention and coerced consent. Petitioner concludes that had counsel properly investigated and obtained the statements of these witnesses, "it is likely that it would or should have altered counsel's decision . . . not to pursue the motion to suppress." Petitioner also concludes that had counsel presented these witnesses to testify at trial, that the jury could reasonably have found a Fourth Amendment violation.

Petitioner initially asserts counsel failed to investigate and obtain the statements of the other individuals at the house on the night in question. Prior to trial, counsel's investigator testified he had investigated both criminal cases against petitioner, checked all leads provided by petitioner, and considered every possible witness. Petitioner testified only that during his discussions with the investigator, the investigator only asked questions about the second charged offense. The state courts implicitly determined the evidence showed trial counsel, through his investigator, had adequately investigated the witnesses petitioner had provided. Although petitioner argued to the state habeas court his belief that the witnesses were not investigated, petitioner did not present any evidence demonstrating such. Even if there were conflicting evidence presented, this court cannot reweigh the conflicting evidence. *Cf. Kately v. Cain*, ___ F.3d ____, 2013 WL 85912, at *4 (5th Cir. January 8, 2013) (even when evidence is contradicted and not as clearly stated as it could have been, the state courts are entitled to credit it and such finding will not be disturbed unless unreasonable). A federal court is to presume a state habeas

court's factual findings are correct absent clear and convincing evidence to the contrary. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir.2004). It is not enough that the federal court "would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). The evidence was uncontradicted, and the state habeas court was entitled to credit it. The state habeas court's finding was not unreasonable.

Even assuming, for the sake of argument, that counsel did not obtain the statements from the witnesses, a defendant who alleges counsel was deficient for failing to investigate "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Similarly, a petitioner seeking to show ineffective assistance of counsel for failing to call a witness must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). "Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Lockhard v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). Petitioner fails to offer anything beyond his own statements as to what the statements and testimony of these witnesses, one of whom is not identified, would have been. Petitioner's unsupported assertions fall far short of the level required for such a claim on federal habeas corpus relief.

More importantly, petitioner fails to show how such statements and/or testimony would have impacted the outcome of his trial. Petitioner argues the witnesses' statements and/or

testimony would have supported his claim that his consent to search the house was coerced due to his removal from the home for questioning and the officers' statements that further investigation of the reports of criminal activity would most likely occur. Even if these witnesses' statements and testimony would confirm petitioner's allegations, the circumstances were still not so coercive as to overcome petitioner's free will and render his consent to search involuntary. Such statements or testimony at trial from other witnesses would not have demonstrated a Fourth Amendment violation, nor does it appear such statements would have altered counsel's decision not to file a suppression motion. Additionally, petitioner cannot show any such testimony from the witnesses would have impacted the jury's determination of guilt. Petitioner's challenges to his attorney's failure to obtain statements from and/or call certain witnesses are meritless.

<u>*Conflict of Interest*</u>

Petitioner appears to argue he was denied effective assistance of trial counsel because counsel was operating under a conflict of interest during petitioner's trial. Petitioner contends a conflict of interest existed because counsel failed to comply with petitioner's requests that he file a motion to suppress or call certain fact witnesses to testify as defense witnesses at trial. Petitioner argues he and trial counsel's "interests had diverged" as to a course of action, and counsel "acted more as a friend of the court's than as an advocate for petitioner."

Ineffective assistance of counsel may result when an attorney labors under a conflict of interest. In claims of ineffective assistance based on a conflict of interest, a defendant must show that (1) his counsel was burdened by an actual conflict of interest, and (2) the conflict had an adverse effect on specific instances of counsel's performance. *Cuyler v. Sullivan*, 446 U.S.

335, 348-350, 100 S.Ct. 1708, 1718-19 (1980). To prevail on such a claim in the Fifth Circuit, a showing of actual prejudice under *Strickland* is still required; that is, that the result of the trial probably would have been different.[7] A speculative or potential conflict is not enough; rather, a conflict exists when counsel is compelled to compromise duties of loyalty to his client. *See Bostick v. Quarterman*, 580 F.3d 303, 307 (5th Cir. 2009). An actual conflict exists if defense counsel is in a position of divided loyalties, *see United States v. Infante*, 404 F.3d 376, 392 (5th Cir. 2005), that results in counsel knowing his clients' interests diverge and that requires him to choose between the interests or compromise his duty of loyalty. *United States v. Culverhouse*, 507 F.3d 888, 893 (5th Cir.2007). Therefore, an actual conflict of interest exists if counsel is required to choose between advancing his client's interests in a fair trial or advancing other interests, including his own, to the detriment of his client's interest. Moreover, a conclusory allegation of an actual conflict is insufficient for obtaining habeas corpus relief. *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000). To show the adverse effect required under the second prong of the *Cuyler* standard, the defendant must show that some plausible defense strategy or tactic might have been pursued but was not because of a conflict of interest. *Id.*

Petitioner has failed to allege sufficient facts demonstrating an actual conflict of interest between he and trial counsel. The record does not suggest counsel was faced with having to make a choice contrary to advancing petitioner's interests. Nor does the record suggest counsel and petitioner's interests diverged – such interests being to require the state to prove the elements of the offense beyond a reasonable doubt – even if they differed in opinion as to the

---

[7] In *Beets v. Scott*, 65 F.3d 1258 (5th Cir. 1995) (*en banc*), the Fifth Circuit held that multi-party representation conflicts (that is, where an attorney has a conflict between two clients) are the only situations where the more lenient *Cuyler* standard applies. *Perillo v. Johnson*, 79 F.3d 441, 448 (5th Cir. 1996). Texas courts have held the proper standard by which to analyze claims of ineffective assistance of counsel due to a conflict of interest is the rule set out in *Cuyler*. *Acosta v. State*, 233 S.W.3d 349 (Tex.Crim.App. 1997) (declining to follow *Beets*).

successfulness or benefit of certain courses of action. At trial, petitioner even acknowledged on the record that as the trial progressed, he had "better feelings" about counsel, knew that counsel was "trying hard" for him, and was "satisfied with the services" counsel had provided. Vol. 3 at 19. Petitioner has not demonstrated an actual conflict of interest.

More importantly, petitioner has failed to show any alleged conflict of interest had an adverse impact or effect on counsel's performance in defending petitioner or otherwise prejudiced petitioner in any way. As previously discussed, petitioner has not shown any motion to suppress would have had merit, would have been granted and would have resulted in the suppression of evidence. Nor would the purported testimony of the witnesses petitioner requested counsel call at trial have made a difference in the jury's determination of petitioner's guilt. Petitioner has not shown he was denied effective assistance of counsel due to any actual conflict of interest. Petitioner's claim should be DENIED.

Petitioner has failed to show his claims of ineffective assistance of trial counsel have merit, or that the state court's denial of such claims involved an unreasonable application of Federal law as determined by the United States Supreme Court, or was based on an unreasonable fact determination. Petitioner's second ground of ineffective assistance of trial counsel should be DENIED.

## C. *Brady* Violation

Petitioner contends the State violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963) by failing to provide the defense with the Crime Stoppers Bulletin referenced by Officer Callahan when conducting the investigation at petitioner's residence. Petitioner contends disclosure of the Bulletin would have revealed the Bulletin was generated prior to petitioner moving into the

house and, therefore, any report of drugs being sold at the residence would not have been applicable to petitioner. Petitioner concludes that with this Bulletin, counsel could have successfully argued the officers did not have reasonable suspicion or probable cause to investigate "that residence on the night in question" for purposes of a motion to suppress, and could have impeached the officers' testimony at trial "as to if they knew the Crime Stoppers Bulletin was outdated and not even applic[able] to [] petitioner."

A due process violation under *Brady* occurs when the government fails to disclose evidence materially favorable to the accused. *Youngblood v. West Virginia*, 547 U.S. 867, 870, 126 S.Ct. 2188, 2190, 165 L.Ed.2d 269 (2006). To establish a *Brady* violation, a petitioner must prove (1) the prosecutor suppressed or withheld evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material either to guilt or to punishment. *See Moore v. Illinois*, 408 U.S. 786, 794-95 (1972); *Ogle v. Estelle*, 641 F.2d 1122, 1124 (5th Cir. 1981). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.*, 126 S.Ct. at 2190. To obtain federal habeas relief based on a *Brady* violation, a petitioner must show the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. *Id.*, 126 S.Ct. at 2190. *Brady* does not require the prosecution "to conduct a defendant's investigation or to assist in the presentation of the defense's case." *United States v. Aubin*, 87 F.3d 141, 148 (5th Cir. 1996). Consequently, if there is evidence of which a petitioner should have known, he must show the evidence was not available to him through due diligence. *Id*.

First, petitioner completely fails to demonstrate the prosecution withheld the Bulletin

from the defense.  The record reflects the prosecution had an open file policy and that trial

counsel reviewed the prosecution's file during the course of his investigation and on the day of

trial.  Vol. 2 at 12.  Consequently, if the Bulletin was in the prosecutor's file, petitioner should

have known of it.  Petitioner also fails to show the Bulletin was in any way favorable to the

defense.  Neither the trial court record nor the state habeas record contain a copy of the Bulletin,

and the trial testimony does not disclose the contents of the Bulletin.  Petitioner has not shown

the Crime Stoppers Bulletin was material either to petitioner's guilt or to his punishment.  The

officers were dispatched to petitioner's residence on the basis of a caller's report of a "drug

house" and drugs also being sold out of a van in front of the residence, not based on the Bulletin

alone.  Petitioner points to no evidence in the record indicating the responding officers possessed

the Bulletin at the time they responded to the dispatch, or had even read the specifics of the

Bulletin.  Although Officer Callahan referenced the existence of the Bulletin in his testimony

and testified he explained to petitioner how Bulletins are used to initiate investigations,

petitioner has not shown how the Bulletin itself could have been used to impeach the officers'

testimony at trial.  The issuance of the Bulletin on an earlier date would not have rendered the

officers' testimony less believable. Petitioner has not shown a reasonable probability that, had

the Bulletin been disclosed to the defense, the result of the proceeding would have been

different, nor has petitioner shown the Bulletin would have placed the whole case in such a

different light as to undermine confidence in the verdict.  Petitioner failed to show the state

court's denial of this claim of prosecutorial error was unreasonable.  Petitioner's third ground

should be DENIED.

## D. Trial Court's Abuse of Discretion

By his fourth ground, petitioner complains of the state trial court's "failure to perform [an] inquiry obligation" after petitioner informed the court of a conflict of interest between petitioner and trial counsel. Petitioner appears to argue the failure of the trial court to perform such an inquiry resulted in the trial court refusing petitioner a continuance of his trial and the denial of his request for new counsel. Petitioner appears to contend the trial court's actions were an abuse of discretion and resulted in the denial of a fundamentally fair trial. Petitioner raised both of these claims during his state habeas corpus proceeding and, as explained below, fails to show the state court's denials of his claims were unreasonable.

A trial court does not have an affirmative duty to inquire into the possibility of defense counsel's conflict of interest, or investigate a non-specific and conclusory assertion of a conflict of interest. *See United States v. Greig*, 967 F.2d 1018, 1022 (5th Cir. 1992); *Stephenson v. State*, 255 S.W.3d 652, 655-56 (Tex.App.–Fort Worth 2008, pet. ref'd). A trial court is, however, obligated to inquire into a potential conflict of interest that has been brought to the court's attention. *See Holloway v. Arkansas*, 435 U.S. 475, 484, 98 S.Ct. 1173, 1178-79 (1978); *Routier v. State*, 112 S.W.3d 554, 581 (Tex.Crim.App. 2003). Moreover, when it is shown an attorney is operating under an "actual conflict of interest," the court must conduct a hearing to determine whether the defendant knowingly and voluntarily waives his right to conflict-free representation. *See United States v. Carpenter*, 769 F.2d 258, 262-63 (5th Cir. 1985). When a petitioner alleges a failure to conduct an inquiry, the petitioner must establish an actual conflict of interest adversely affected counsel's performance. *See Mickens v. Taylor*, 535 U.S. 162 (2002).

First, petitioner alleges no true "conflict of interest" in the sense of counsel being torn or

divided between competing interests or loyalties which could potentially affect legal representation, such as in cases of multiple representation, or in the sense of a conflict involving the attorney's self-interest against the duty of loyalty to his client. Instead, petitioner alleges differences arose between he and his counsel concerning the investigation of his case, challenges to be made to the evidence, and the benefit of the testimony of certain witnesses.

Here, the trial court was apprised of a potential issue of a conflict between counsel and petitioner by both parties. Petitioner was heard and was permitted to freely testify as to his belief that the case had not been investigated, of his strained relationship with counsel, and miscommunications with counsel. The trial court heard such testimony, as well as a statement from counsel, and denied petitioner's request for a continuance of his trial and for the appointment of new counsel, implicitly determining petitioner did not make a proper showing of an actual conflict of interest between petitioner and his counsel.[8] Petitioner has not shown this inquiry was inadequate.

Petitioner has failed to allege sufficient facts demonstrating an actual conflict of interest between he and trial counsel, much less to show any alleged conflict had an adverse impact or effect on counsel's performance in defending petitioner at trial or otherwise prejudiced petitioner in any way. As previously discussed, a motion to suppress on the grounds petitioner has identified would not have had merit, would not have been granted and would not have resulted in the suppression of the evidence seized from petitioner's house. As also previously discussed,

---

[8]Under Texas law, petitioner had the burden of proving he was entitled to a change of counsel by making a proper showing of appointed counsel's actual conflict of interest. *See Malcom v. State*, 628 S.W.2d 790, 791 (Tex.Crim.App. [Panel Op.] 1982). Petitioner could not carry his burden with vague expressions of dissatisfaction, *see Maes v. State*, 275 S.W.3d 68, 71–72 (Tex.App.-San Antonio 2008, no pet.), personality conflicts, or disagreement concerning trial strategy. *See King v. State*, 29 S.W.3d 556, 566 (Tex.Crim.App. 2000); *see also Carroll v. State*, 176 S.W.3d 249, 255 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd) (recognizing conflict of interest may warrant court's exercise of discretion to appoint substitute counsel but that general allegations of communication breakdown and lack of cooperation did not require substitution of counsel).

petitioner has not shown the testimony of other witnesses would have aided in petitioner's defense, or would have impacted the outcome of his trial. Petitioner has not shown a valid basis for a continuance of the trial or the appointment of new counsel, nor has he demonstrated a denial of due process or of a fair trial, or a denial of any other federally protected constitutional right. Petitioner raised this claim during his state habeas corpus proceeding and has not shown the state court's denial of his conflict of interest claim was unreasonable. Petitioner's claim should be DENIED.

## E. Assistance of Appellate Counsel

Petitioner was represented by new counsel on appeal. Counsel filed an *Anders* brief stating the facts developed by the evidence and explaining why he could not, in good faith, argue the merits of any potential grounds of error. Petitioner availed himself of the opportunity to file a *pro se* appellate brief arguing ineffective assistance of counsel for failure to (1) present witnesses at trial, (2) file a motion to suppress, and (3) withdraw due to a conflict of interest, as well as (4) abuse of discretion of the trial court in failing to inquire into the conflict of interest, grant a continuance and substitute counsel. The state appellate court conducted its own review of the record to assess the accuracy of appellate counsel's conclusions and to uncover any error, reversible or otherwise, and concluded none existed. By this ground, petitioner contends he was denied effective assistance of counsel when appellate counsel filed an *Anders* brief on appeal rather than arguing the grounds he raised on appeal and currently raises in this federal petition.

Appellate counsel is not required to argue every conceivable issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 749 (1983). In fact, effective counsel should focus an appeal on the strongest potential issues rather than presenting all conceivable arguments of error. Nor is

appellate counsel required to consult with the defendant about the legal issues to be presented on appeal. *Hooks v. Roberts*, 480 F.2d 1196, 1198 (5ᵗʰ Cir. 1973). Appellate counsel's failure to raise certain issues on appeal does not necessarily deprive an appellant of effective assistance of counsel. *Id.*

Moreover, to establish an ineffective assistance of appellate counsel claim, a petitioner must satisfy the same test for ineffective assistance of trial counsel claims. *See Smith v. Robbins*, 528 U.S. 259, 286 (2000). To demonstrate deficiency, a petitioner must show appellate counsel "unreasonably failed to discover [and raise on appeal] nonfrivolous issues." *Id.* To prove prejudice, a petitioner must show that but for counsel's deficient performance, "he would have prevailed on appeal." *Id.*

Here, after appellate counsel opined there were no grounds with arguable merit, the state appellate court allowed petitioner to raise the issues he wished to raise on appeal. As petitioner raised the points of error he wanted asserted on appeal, petitioner has not shown he was prejudiced by any purported deficiency on the part of appellate counsel to raise these issues. Even so, the state appellate court implicitly found these issues to be without merit. Petitioner presented all of the claims raised in this federal petition, including the instant claim of ineffective assistance of appellate counsel, to the Texas Court of Criminal Appeals and was denied relief on the merits. Petitioner has failed to show the state court's denial of his ineffective assistance of appellate counsel claim was unreasonable. Petitioner has not demonstrated appellate counsel was deficient for failing to raise a non-meritorious ground on appeal, nor has he demonstrated he was prejudiced by appellate counsel not raising any ground petitioner has raised in this federal habeas petition. Petitioner cannot show the result of his appeal would have been different if

appellate counsel had raised any additional claims. Petitioner's ground should be DENIED.

## V.
## RECOMMENDATION

For the reasons set forth above, it is the RECOMMENDATION of the United States

Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus

filed by petitioner TIMOTHY RAY WILLIAMS be DENIED.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this <u>31st</u> day of January 2013.


_Clinton E. Averitte_
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation

contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).